Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and His Honorable Court. Good morning and welcome to this session of the 11th Circuit. Judge Newsome, Judge Chouflat and I were supposed to be in Jacksonville this week and hopefully we'll return to live court sometime in the future if things get better with the vaccinations and the positivity rate for the COVID infection. But we've been having these arguments by Zoom and they've been working relatively well given the circumstances so we hope that that'll be the case this week too. You all know the drill. We obviously don't have a clock with light for you but we do have a timer on the corner of the screen so you can see what time you have left. Ms. Geddes will also let you know when you have two minutes left in your argument. If we take you beyond the clock, don't worry, you're on our time and not yours and we'll keep going until we finish with our questions. As Chief Judge Pryor likes to say, we've read your briefs, certain portions of the record and the authorities cited and so we're pretty comfortable with a general understanding of your cases but you obviously know them much better than we do and that's why we're here so you can help us figure them out. With that we'll begin with case number 19-11333 United States versus Nadine Bromfield Alexander and Shamir Hassan. Mr. Wander, you're up first. Your mute button is still on. Sorry. Good morning, Your Honors, Judge Jordan Newsom and Cho Flatt. I'm Jason Wander. May it please the court. We are here on Shamir Hassan's appeal. I will focus the beginning of my remarks on issue three, the identity theft jury instruction under 18 U.S.C. 1028. The trial judge in this case read over defense objection the standard 11th circuit jury instruction on identity theft that had amended at the time of this trial. The new standard instruction added a word that rendered the defendant's theory of defense in this case and the jury instruction itself illegitimate as it related to him and in fact on the government's brief in this matter, page 66, they confirmed that that word and that modification of the instruction was intended for not him but his co-defendant but as to him it expanded the reach of the statute by including the word illegitimate when the statute criminalized use of personal information in an underlying unlawful conduct whereas the jury instruction states the government is required to prove the defendant transferred possessed or used the other person's means of identification for an unlawful or illegitimate purpose. Adding the word illegitimate in this jury instruction directly impacted the defendant's theory of defense in this case whereby he argued that while he may have broken or violated Jamaica Bank rules or regulations helping people send money, there is no evidence in this case that he participated in the lottery fraud and in fact the fraudsters deliberately kept him in the dark. Moreover there's no evidence he participated in stealing identities or that he knew the identities were stolen. I wonder is that you say there's no evidence but you mean no direct evidence right? There is no direct evidence and in fact the government for all intents and purposes confirmed that he was kept in the dark. They did obtain the deliberate ignorance instruction and argued that he both knew and didn't know. The evidence on that is we argued insufficient but either way the instruction on the jury instruction relating to really where the evidence in the case lied against my client was overwhelmingly in relation to the identity theft and the evidence that he used identities to assist in the transfer of money. But as we argued that could have been done as part of another kind of crime involving drugs or something else which would not have implicated him in a lottery fraud or it could have been him assisting people with legitimate strict bank regulations and that all came out during the trial and was part of the evidence in the case. Can I ask you a question? This is Judge Newsom so but didn't the judge instruct the jury as well that Hassan that the government had to show that Hassan's transfer possession use of another person's means of identification was quote during and in relation to a felony violation of 18 U.S.C. 1349? Judge he did say that. So how does that square up with your theory that the the addition of the phrase or illegitimate must have expanded liability beyond unlawfulness? Similar to the Onspaw case judge which I cited in my brief 792 F 3rd 1302 from this court in 2015. Counsel two minute warning. Thank you. The Onspaw case involved a honest services fraud instruction while the standard did have the normal standard fraud instructions it was the the the follow-up instructions that expanded the use of the honest services fraud to include not only kickbacks but also underlying interest which had been specifically prohibited by the skillings decision and so it's not necessarily sufficient just to have the basic elements it's those descriptive and definitive parts of the instructions like in the Onspaw case and like in this case that is what the jurors look to to define what the elements and the regular jury instructions are so in this case when they see that the defense posited by the defendant is that he may have acted illegitimately but not unlawfully that instruction in essence poisoned the well and prevented him from being able to thrust his his legitimate defense and so while the the court did instruct on the basic standards the addition of the use of the word illegitimate similar to the illegitimate instruction in Onspaw prevented Mr. Hassan from getting the full thrust of his defense in addition judge your honors the evidence in the case was despite the assertions there was no evidence that Mr. Hassan ever in fact profited while there was testimony that he obtained extra money they never found any throughout all the forensic review and in fact there was testimony that whatever monies he got was for the courtesy of doing the transfers without them being in person and in fact the only evidence really of the deliberate ignorance issue is testimony that came out in cross-examination where the main argument has expired thank you may I finish you can finish up yes of course thank you your honor whereas in cross-examination of the main co-defendant he indicated that he had an unwritten agreement an unspoken agreement don't tell me no lies I won't don't ask me any questions I'll tell you no lies in fact that was severely impeached because he had never made that statement in any of his prior statements to the uh to the investigators or in any of the 302s it came out could honestly out of left field during his cross-examination and the government's brief suggests that's the most powerful evidence of his deliberate ignorance so in fact there was no evidence that he had any knowledge of this this could have been him helping people using legitimate source of income try to evade the bank the strict bank rules and under those basis your honors that jury instruction as well as the other issues we've raised um really violated Mr. Hassan's ability to obtain a fair trial very much Mr. Wanda you saved your time for rebuttal thank you Mr. Bashir thank you may it please the court and good morning your honors Adeel Bashir on behalf of Ms. Alexander I'd like to first begin with the vulnerable victim enhancement and there's two points I'd like to make both of which stem and flow from understanding Mrs. Alexander's role in this conspiracy so to set the stage the conspiracy here has two parts one aspect is targeting soliciting and scamming individuals in order to obtain money and the second part which is the part all of the evidence linking Ms. Alexander to is the money laundering aspect of this conspiracy and the part your honors were just discussing with my colleague here on the vulnerable victim enhancement the district court said and I would quote this is pages 97 98 of the sentencing transcript and again on 115 that the vulnerable victim enhancement was applied because primarily because of the trial testimony linking Ms. Alexander to the victims however it there is no testimony and as your honor we're just mentioning direct or circumstantial that ties Ms. Alexander to any of these victims in fact there's affirmative evidence that shows Ms. Alexander was not present during the phone calls she did not participate in the phone calls she did not overhear any of the phone calls the PSR even reflects as much in footnote one indicating that Ms. Alexander was not and did not make any of the phone calls to the victims themselves so really when we understand this fraud from these two different aspects on the one hand the solicitation and on the other hand the running aspect we see a clear disconnect when it comes to victim enhancement because there is no linkage between what the district court is citing in terms of the trial testimony and Ms. Alexander itself and I think Mr. Bashir just a quick question does our case law require that sort of specific linkage between the defendant and the victims that you're talking about I mean I thought our case law said that at least whereas here there is evidence you can dispute the sufficiency of the evidence I guess but where there's evidence to show that the defendant was pretty deeply involved in the conspiracy that the district court can fairly infer that the defendant understands that the victims are vulnerable so two responses to that to the legal aspect of the level of specificity and I believe the day case does show that there needs to be a finding that not just a general understanding of the conspiracy itself but that Ms. Alexander there's a specific finding that she understands the types of victims to the second half of what we're of what the district court and how the district court is inferring as your honor was saying the inference here really is the problem because the inference is expressly made from the fact that Ms. Alexander was present at the apartment where these calls were being made that's what that that is the testimony that the district is relying on but when you really dig down and look at that trial testimony the government even concedes there is no trial testimony that Ms. Alexander was present during these calls contextually speaking she's the girlfriend of the kingpin and was at the home itself and a really important aspect of this is there was two interrelated enhancements one was the vulnerable court did not find that Ms. Alexander had that knowledge and we know from the trial testimony that when callers called the victims for example Mr. Nost that cited the callers said they were from IRS agencies or other government agencies so if Ms. Alexander is unaware that aspect which she presumably also would have over overheard it would surely follow that she did not have same sufficient knowledge to understand the types of victims and that really circles back to the first point your honor was making the level of specificity it's not enough for her to know that thank you and it's not enough that she understands that perhaps there are victims in Jamaica but that these victims are vulnerable and the types of victims that are being targeted yes your honor what time can you establish knowledge can the government establish knowledge for this enhancement in other words does it have to be when she first becomes a part of the scheme or can you or can the government try to show that she gained the knowledge maybe even towards the end of the scheme before it all fell apart or does it matter i think i think a fair a fair reading of the case is that knowledge could be established at any point of her participation of the conspiracy and since this is a conspiracy case before she had withdrawn here though whether to your last to your honor's last point it it doesn't matter here because at no point in the conspiracy whether before during or after is there a single piece of evidence that miss alexander is in is even in the made let alone that she's overheard the calls um in the sentencing transcript the government's witnesses expressly said there was no trial testimony that she was present during the phone calls the psr reflects the same and even if you look very carefully at the sentencing court's findings um and again 97 98 and on 115 of the sentencing transcript the sentencing court is involvement in identity theft wire fraud and opening credit cards and the only piece of evidence and i would quote this is the calls being made from the premises so the inference here is that because calls are being made one miss alexander i see my time is expiring if i can just finish this no no go ahead go ahead and conclude please um that miss alexander one overhears the of which we have no evidence and number two she overhears specifically the types of victims that are being um targeted and since we know she did not even hear that the callers were misrepresenting themselves the inference that she could hear on the other end the types of victims is far beyond what the day case would allow um in this instance i see my time has expired unless the court has questions thank you very much mr basheer you've saved your time for rebuttal as well thank you miss sweeney uh good morning your honors and counsel um may it please the court my name is sarah sweeney on behalf of the united states um i'll begin um with the vulnerable victim issue that miss alexander uh kept focused on during her argument here um or mr basheer's both of its sentencing determinations that are at issue here but in particular as to this one focused on three factors um it focused on the amount the different ways that miss alexander promoted the conspiracy that showed that she had agreed to the full scope of the conspiracy it focused on the length of her involvement um in the conspiracy that her known active involvement in the conspiracy and it focused on her proximity to the fraud that was going on um so i'll start with the last one with the proximity because i think it most closely ties um to what mr basheer argued here and that is yes there is no direct evidence that miss alexander heard a call or was present for a call but what there is evidence of is that she was present at different apartments where multiple of the conspirators lived and there was ongoing fraud in those apartments including calls made by mr maduri and mr lapalm to victims while most of the people involved in these conspiracies were not involved in contact with victims those two conspirators did call victims um and then two of the other conspirators morris and stewart stated that they came to mr maduri make these calls from that evidence it's a fair inference by the district court that miss alexander from her proximity would also have been able to understand the nature of the fraud um and as the district court noted some of these victims were called again and again and again and as a result but miss sweeney what what were the content of those calls that would have placed somebody who heard them from the outside on notice about the fact that they were targeting vulnerable victims well your honor i think that you you could the district court could infer that you could tell from the nature of the conversations that they were targeting targeting vulnerable victims for instance mr kornfeld's family talked about how the calls preyed on him and and tried to establish these personal relationships and that would be something but but you but any fraud victim is preyed upon your honor i think here the the inference would be that personal the attempt at the personal connection um and the way that they called the same people over and over to build familiarity that's the way but that doesn't make a victim vulnerable a lot of a lot of a lot of schemes build on fostering these relationships of trust so that then you can you know defraud them unfortunately but it doesn't mean that the victim is vulnerable within the meaning of the guideline right not by itself your honor but i think if they fall victim to it yes i think day says that reloading um and being able to have that actually be effective does make a victim vulnerable but i i want to contend i i i see i understand your honor's point um and i think the the other side here is that miss alexander doesn't have to know that the victims are vulnerable the district court also relied on the fact that she should have known they were vulnerable and that that that does not depend as much on actually hearing and understanding the content of the calls but instead understanding the nature of the conspiracy and the district court found that it was part of the efficient operation of the conspiracy to be able to repeatedly target these vulnerable victims and as a result of her her full agreement to the scope of the conspiracy it therefore found correctly that she should have known that there were vulnerable victims as well um i would also just like to briefly address the idea that there are two linked enhancements um as mr basheer said the district court did find that she should not be that miss alexander should not be held accountable for that there's two points i just would make quickly about that one is just because the district court didn't find her accountable for that doesn't mean that it couldn't have based on the evidence that mr basheer said which is that mr noz did say that he had been contacted by the irs but even more than that most of the evidence about the misrepresentations on behalf of government agencies actually came from mr computer they were written communications they were letters that the conspirators sent to some of the victims and that's given the the necessity of the proximity that's something miss alexander could not be fairly to inferred to have heard because it occurred um in a in in a different way um for many of the victims um i'll now um address mr hassan's counsel's arguments um about uh his conviction um and in particular i'll start with the id theft instruction um i mean the the word illegitimate here applies only to the second element of the offense and it simply informs the jury that the the information does not need to be stolen um in order for someone to be convicted of aggravated identity theft um and here uh mr hassan you know says that this instruction undercut his defense but i it didn't because he still argued that all he had done was violate jamaica national's policies and the jury clearly rejected that argument um but but but but it's not it's not a this doesn't mean that mr wander is right in this case but it's enough it's not enough to say that a defendant was able to argue something to a jury if a jury instruction really precluded the jury from considering that argument and giving effect to it right you are right and that's where i was going your honor here even that that point i think is amplified my point that he was able to effectively argue this was is amplified by the third element of the aggravated identity theft instruction which tells the jury that the use um possession or transfer beyond being the person having illegitimate access to the identity information has to be during and in relation to a felony offense and given the presumption that juries follow the instructions that are given to them here there was no impediment to the to the defense being made to the jury um because this jury instruction accurately covered um the nature of the charge um let me ask you a more general question we've got to obviously write an opinion on this case and and part of it is going to focus on the use of the word illegitimate in the instruction and the pattern instruction does that word have any role to play in a case where a defendant charged with aggravated identity theft was initially in lawful possession of someone else's identity documents absolutely it does your honor that's precisely what it well it can apply in different ways um so one would be where someone accesses identity information beyond the scope of their authorized ability to access it so for instance someone working at the dmv um who has access lawful access to the information but exceeds that access another way that i saw illegitimate described in the case law and this is in the flores figueroa case um from the supreme court they describe potential illegitimate uses of identity information including by things like dumpster diving where someone information has been discarded but someone then goes and retrieves it that wasn't necessarily unlawful but their continued possession and use of it was illegitimate and then in furtherance of a felony offense so that was discussed in the flores figueroa case as well so there are a number of ways that someone can possess use or transfer this information illegitimately rather than unlawfully from the outset and then um mr wagner also discussed um the the deliberate ignorance instruction um for a a period of time in his argument and i i want to respond particularly to one thing he said he said that this was an unspoken agreement um between mr maduri um one the main co-conspirators and mr hassan the evidence of trial was that it was not unspoken it was explicit mr maduri testified that he and mr hassan had in fact explicitly agreed that mr hassan would not ask about the source of the funds um and that that evidence is really more than sufficient to support the giving of a deliberate ignorance instruction it's it falls precisely within what the nature of that instruction is that someone's put on notice that something is wrong and then deliberately um omits to ask any further questions um on the other hand there there was um sufficient evidence as well there were the jury had kind of two theories of um responsibility for knowledge that it could find here the other was actual knowledge and there and mr hassan was not directly informed of the nature of the funds but he received repeated trainings and warnings and even specific warnings to him from jamaica national the money laundry the money transmitting company that he worked with um that the activities he was doing ran the risk of being part of a lottery scam um so as a result of that being in all my years here i can say to a fair degree of certainty that almost all of these deliberate ignorance instruction cases result in the government arguing harmless error on appeal because the evidence overwhelmingly showed direct and actual knowledge and not just deliberate ignorance so that you could never get to a deliberate ignorance issue because the government is saying we didn't really need that instruction we proved actual knowledge tell me about that i mean if the government can prove actual knowledge why does it want or why does it need a deliberate ignorance instruction and why does the government generally fail to defend it and argue harmless error so your honor we we obviously do our argue harmless error on this point in our brief but i and you know i can't comment on on every case where we do this but in this case in particular i mean i i um i don't know that i've seen another case where there was testimony about an explicit agreement not to ask questions um that to me seems to justify a deliberate ignorance instruction um regardless of whether there was also proof of actual knowledge which obviously we do think there was here um but i mean yes it it is harmless error because there is proof of actual knowledge but i would say the the evidence of that from which the jury could find deliberate ignorance is is particularly strong here um i think it's rare i i don't i wouldn't say it obvious obviously it's happened before in the the canons of criminal law but it's rare that there's a a direct and explicit agreement on that point um and um i guess the final point i'll make on that is that mr while mr wadner said that that testimony was um impeached in some way i definitely mr maduri was questioned about it um i think i i don't think that it's fair to say that it was strongly impeached but regardless of whether it was or wasn't um in terms of a sufficiency of the evidence uh sort of issue um you know all the inferences are drawn in favor of the jury's verdict so that impeachment um does not have any impact on the the um the convictions here so your honors i think i've um addressed counsel's arguments uh if the court has any other questions i'm happy to answer them or i'm happy to yield the rest of my time thank you very much thank you very much miss sweeney uh mr wadner yes your honors uh may please the court uh briefly on the jury instruction related identity theft um the instructions as read did not limit itself to the second element and that's critical because while they may uh argue that it was related to the second element and therefore to miss alexander the instructions did not explain that in any way shape or form so the jury was free to utilize it in whatever way they chose and again it clearly impacted negatively on defendant hassan's theory of defense regarding deliberate ignorance judge your honors can review the jury's uh the wonder you're you're sort of bleeding out so if you could just face the the microphone we'll be able to hear you i'm so sorry your honor uh your honors can review mr maduri's testimony on that issue it's on page 278 of document 376 and clearly he never mentioned even the government acknowledged in its in its examination of him on this issue that he never told the agents that there was this uh explicit agreement and none of the 302s established it it was out of left field and yet the government hangs this entire deliberate ignorance hat on this explicit agreement that was not part of the evidence until it was brought out of left field and in fact all of the testimony your honors of all the co-defendants throughout the case was that they went out of their way to prevent mr hassan from having the information because they knew or concerned how he would react and in fact jamaican national bank when they when they instructed uh mr hassan they instructed him by mailings and letters no evidence that he in fact was personally instructed and um in fact when they cut him off what about the volume what about the volume of the transactions and the amounts mr wander how does that play into the equation if at all yes your honor there there was a significant volume of traffic there's no doubt about that there's no question so your argument has expired but go ahead and finish mr wander of course thank you uh but again your honor if he did not have actual knowledge or deliberate ignorance of those transactions then it's not a criminal act it's a businessman doing his job even if he was evading restricted regulations he did not have any awareness of the criminal nature in fact they kept it from him and they went out of their way to keep it from him because they were concerned about what he would do about it in other words if he were to ask them they know that he would have that they would have lied then what what is a is a businessman supposed to accept uh a lie or just not do any business whatsoever that's the conundrum with deliberate ignorance in this case there is absolutely no evidence that he had actual knowledge or participated in any way yes there was a lot of transactions but no evidence that he had any knowledge that the victims were the identity theft victims were stolen he had no part of that nor that there was a lottery scheme at all this could have been any other crime and he wouldn't have been convicted of lottery scam or or wire fraud or it could have been argued very much thank you judge thank you thank you all very much mr basheer miss weenie we appreciate it yes uh your honor just um two brief points here i'm so sorry i completely forgot about your your rebuttal my apologies my apologies it's all right um not a problem at all just uh two brief points i won't hold you up you can have an extra minute it's okay i was gonna say i'm pretty used to people trying to get rid of me just hopefully hopefully not here no i'm enjoying our time here um and i do want to just two brief points and pick um on a theme uh judge jordan that that i think uh you hit the nail on the head when it comes to knowledge uh here and how um the government really is trying to have it two ways and as it specifically relates to miss alexander i bring the court back to the two aspects of this conspiracy the solicitation and the running and we know from conspiracy case law you can be found guilty without having knowledge of the full scope and here and i can use my the right hand doesn't necessarily need to know what the left hand is doing and the theme i think we are hearing from both parties or all the parties this morning is the key players in this conspiracy were trying to keep the ancillary players including miss alexander as a minor role recipient outside of what was going on so the idea that miss alexander knows every aspect particularly the types of victims and the most integral aspect that this is a lottery scam to falsely represent the types of victims really is a bridge too far and the last point i'll just briefly make uh your honor mentioned in all the years that you've been doing this how the government is arguing deliberate ignorance and knowledge it made me think and a very common theme as well is in every case in which you have a minor role particularly a significant other or girlfriend that's involved in the scheme there's always a presumption well she should have known but what's missing is the actual evidence of why she should have known in fact we know from here the again the key players mr curlew mr mordier etc were deliberately keeping miss alexander and others outside of the loop so as to insulate themselves and we know that to be true because of the minor role enhancement we know that to be true because of the misrepresentation so in finding that by the preponderance she should have known on the other end of the call the types of victims the district court did error and abused his discretion all right thank you very much mr basheer ponder mr basheer miss sweeney for the second time thank you very very much we really appreciate the help thank you very much